UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY GOODMAN,

    *Plaintiff*,

v.   CASE NO. 12-CV-11346

COMMISSIONER OF   DISTRICT JUDGE SEAN F. COX
SOCIAL SECURITY,   MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

### I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.   REPORT

#### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits. This matter is currently before the court on cross-motions for summary judgment. (Docs. 8, 12.)

Plaintiff was 45 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 22, 97.) Plaintiff's employment history includes work as truck driver for 13 years. (Tr. at 122.) Plaintiff filed the instant claims on March 8, 2010, alleging that he became unable to work on October 1, 2009. (Tr. at 97.) The claims were denied at the initial administrative stages. (Tr. at 46.) In denying Plaintiff's claims, the Commissioner considered disorders of the back (discogenic and degenerative) as possible bases for disability. (*Id.*) On June 15, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the application for benefits *de novo*. (Tr. at 10-21, 22-37.) In a decision dated July 1, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 18.)

Plaintiff requested a review of this decision and the ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 22, 2012, when, after the review of additional exhibits[2] (Tr. at 4, 95-96, 158-60, 281-88,) the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On March 26, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.    Standard of Review**

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d

3

at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

4

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

5

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

    **D.**    **ALJ Findings**

6

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff meets the insured status requirements through December 31, 2014, and that he had not engaged in substantial gainful activity since October 1, 2009, the alleged onset date. (Tr. at 12.) At step two, the ALJ found that Plaintiff's degenerative disc disease and degenerative joint disease were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 12-13.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 16.) At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 13-16.) The ALJ also found that Plaintiff was a younger individual, age 18 to 44, on the alleged disability onset date. (Tr. at 16.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 17-18.)

### E.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated for back, shoulder and leg pain by several doctors. Plaintiff's low back pain began in September 2009 when he "pulled a dumpster off a curb and felt a burning and twinge in his low back." (Tr. at 249.) Plaintiff was treated by Wilbur J. Boike, M.D., of Boike Medical Services from October 2009 to January 25, 2010. (Tr. at 161-78.) Plaintiff was also treated by Michael Young, M.D., from January 17, 2008 to March 19, 2010. (Tr. at 179-223.)

Plaintiff participated in physical therapy in October and November of 2009. (Tr. at 176-78, 210-15.) Upon discharge, it was noted that Plaintiff's "[l]ong-term goals" were "partially met" and that his "[p]osture and gait" were "now normal." (Tr. at 206.)

An MRI of Plaintiff's lumbar spine taken on October 12, 2009, showed "[m]ultilevel spondylotic changes [] including a left central disc herniation at L2-L3 with moderate compression

7

on the thecal sac. There is also additional left posterolateral disc protrusion component and this level partially impressing on the exiting left L2 nerve root." (Tr. at 175, 219, 221, 228, 288.)

Plaintiff underwent transforaminal epidural steroid injections on December 3 and 17, 2009, at the left L2-L3 and L3-L4 levels. (Tr. at 172, 173.)

An MRI of Plaintiff's cervical spine taken on December 1, 2009, was "[n]ormal[.]" (Tr. at 217.) An MRI of his cervical spine taken on December 29, 2009, showed "mild spondylotic changes [] with no focal disc herniation, central canal stenosis, or significant neural foraminal narrowing." (Tr. at 171, 230, 262.)

On January 5, 2010, as to Plaintiff's left lower extremity, Dr. Boike noted that "[s]ensory and motor nerve conduction studies of the left lower extremity were performed, and were of normal amplitudes, distal latencies, and conduction velocities. Detailed needle examination of the left lower extremity and related lumbosacral paraspinal muscles was normal, without evidence of past or present denervation." (Tr. at 164, 197, 253.) In addition, "examination reveal[ed] normal strength in the left lower extremity, both proximally and distally." (*Id.*) As to Plaintiff's right upper extremity, Dr. Boike noted "normal strength in the right upper extremity, both proximally and distally" and that "[d]etailed needle examination of the right upper extremity and related cervical paraspinal muscles was normal, without evidence of past or present denervation." (Tr. at 199, 255.) In other words, the EMG study was "[n]ormal[.]" (*Id.*) Dr. Boike summarized that Plaintiff "underwent right upper extremity and left lower extremity EMG testing today" and "[b]oth studies were normal." (Tr. at 254.)

On January 25, 2010, Dr. Boike noted that Plaintiff's "[p]ain has persisted despite epidural steroid injections, physical therapy, and work absence" and that "[e]xamination reveal[ed] normal strength in both lower extremities, both proximally and distally." (Tr. at 161, 252.) Dr. Boike also

8

opined that Plaintiff's "discomfort is radicular in nature, and corresponds to nerve root compression at the site of the left L2-3 disc herniation." (*Id.*) Dr. Boike indicated that he referred Plaintiff to "Dr. Guyot for evaluation and possible surgery." (*Id.*)

On February 1, 2010, Lisa L. Guyot, M.D., Ph.D., examined Plaintiff and noted that Plaintiff "has tried all non-surgical options, therefore, he was offered a left L2-L3 laminotomy and diskectomy" and, after discussing the risks involved, Plaintiff "wishe[d] to proceed." (Tr. at 195, 251.)

On March 2, 2010, an MRI of Plaintiff's right shoulder, humerous and elbow was "[n]egative." (Tr. at 216, 260.)

On June 22, 2010, an MRI of Plaintiff's right shoulder showed "partial thickness tears of the articular surface of the infraspinatus and conjoined tendons, with some underlying bone marrow edema" that were "suspicious for a slap lesion." (Tr. at 231, 287.) The same day, Dr. Boike indicated that Plaintiff "would likely benefit from lumosacral spine surgery" and that he would need to "repeat lumbosacral MRI scanning, since his prior study was performed in October 2009." (Tr. at 248.)

On August 9, 2010, a stress echocardiogram report was normal. (Tr. at 246.) On November 24, 2010, Mark E. Dyball, D.O., interpreted the previous MRI of Plaintiff's right shoulder as showing "possibly a SLAP [superior labrum anterior posterior] lesion" and recommended an MRI arthrogram to confirm the diagnosis. (Tr. at 265.)

On May 18, 2011, Dr. Young wrote a recommendation that Plaintiff be "excused from work/school" because of "several severe medical ailments which has disabled him permanently" such that he "is not capable of sustaining gainful employment." (Tr. at 263, 273 284.)

Plaintiff testified at the administrative hearing, that he experiences pain down his back, groin, buttocks, and left leg, and that his left leg goes numb at times. (Tr. at 27.) Plaintiff stated that he can stand for "[r]oughly about an hour, 45 minutes to an hour" before he needs to sit, that he can walk for "[b]etween 45 minutes to an hour before the pain gets so severe" and that he does not use a cane. (Tr. at 27-28.) Plaintiff added that he can sit for "[b]etween a half hour, 45 minutes" before needing to stand up. (Tr. at 28.) Plaintiff stated that he helps around the house, goes grocery shopping with his wife, goes to his children's softball games, does not have any problems with personal hygiene, mows the lawn on a riding mower for an hour and a half, and drives "wherever [he] needs to go," including trips to his mother-in-law's cabin in Northern Michigan. (Tr. at 29-30.)

The ALJ asked the vocational expert ("VE") to assume someone with Plaintiff's background who

> cannot lift, carry, push or pull more than five pounds frequently, no more than ten pounds occasionally and assume these additional restrictions. That with the upper right extremity which is the non-dominant extremity, there should be no more lifting or carrying of more than five pounds and with the right arm, there should be no pushing or pulling. Assume a person who should be able to alternate sitting and standing at will. The person should not need to climb ladders, can only occasionally climb stairs with handrails, can only occasionally stoop and crouch and should not crawl. There should be no reaching above shoulder level with the right arm and only occasional reaching in other directions with that arm. There should be no exposure to hazard or to vibration and no use of foot or leg controls.

(Tr. at 34-35.) The VE indicated that such a person perform the 2,500 information clerk jobs, 600 inspector jobs and 2,100 packager jobs available in the State of Michigan. (Tr. at 35.) The VE further testified that these jobs would involve simple, routine, repetitive tasks that involve no more than one or two steps and would not involve any stooping. (Tr. at 35.) The VE indicated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 36.)

**F.    Analysis and Conclusions**

10

**1.     Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 13-16.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

11

Plaintiff specifically contends that the ALJ erred by improperly concluding that Plaintiff did not meet or equal Listing 1.04A. (Doc. 8 at 6-7.) Listing 1.04A applies to disorders of the spine and requires "[e]vidence of nerve root decompression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg-raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, App'x 1, Listing 1.04A. A plaintiff's impairment must match all the specified medical criteria in order to show the impairment meets a Listing. *Sullivan*, 493 U.S. at 530; 20 C.F.R. § 404.1525(c); *Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Plaintiff cannot rely on the "overall functional impact of his unlisted impairment or combination of impairments" to satisfy equivalence to a Listing. *Zebley*, 493 U.S. at 531. Where the record lacks medical evidence supporting limitation in the range of motion and loss of motor reflex, the Listing is not met. *Lawson v. Comm'r,* 192 F. App'x 521, 529 (6th Cir. 2006).

I suggest that substantial evidence supports the ALJ's findings that Plaintiff did not meet Listing 1.04's requirements because the "record does not document that all of the following are present: neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, App'x 1, Listing 1.04A. (Tr. at 12.)

Plaintiff argues that Dr. Guyot's findings that Plaintiff's sensation to pinprick and light touch was "decreased in the left lateral thigh compared to the right[,]" that his "[r]ange of motion of the lumbar and cervical spine were limited secondary to pain," that his "[s]traight leg raise [was] positive on the left at 50 degrees" and "Phalen's sign [was] positive," along with Dr. Guyot's

12

records showing that Plaintiff has spinal stenosis, are adequate to meet Listing 1.04A. (Doc. 8 at 7.) However, I suggest that the ALJ correctly found that this evidence did not satisfy all the requirements of Listing 1.04A because there is no objective medical evidence supporting the sensory or reflex loss portion of the requirements. Dr. Boike stated that Plaintiff "underwent right upper extremity and left lower extremity EMG testing today" and "[b]oth studies were normal." (Tr. at 254.) On January 25, 2010, Dr. Boike noted that "[e]xamination reveals normal strength in both lower extremities, both proximally and distally." (Tr. at 161, 252.) I suggest that since "credible evidentiary choices or medical findings [] exist to support the decision of the ALJ that the claimant does not satisfy Listing 1.04," the decision of the ALJ should be affirmed. *See Ferrari v. Astrue*, No. 08-0719, 2009 WL 3010817, at *4 (W.D. La. Sept. 21, 2009).

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the

objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                      s/ Charles E. Binder
                                                   CHARLES E. BINDER
Dated: March 5, 2013                    United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: March 5, 2013                    By     s/Patricia T. Morris
                                                       Law Clerk to Magistrate Judge Binder